Michael R. Lozeau (SBN 142893)
Email: michael@lozeaudrury.com
Douglas Chermak (SBN 233382)
Email: doug@lozeaudrury.com
LOZEAU DRURY
1939 Harrison Street, Suite 150
Oakland, CA 94612
Phone: (510) 836-4200
Facsimile: (510) 836-4205

*Attorneys for Plaintiff*
CENTER FOR COMMUNITY ACTION AND
ENVIRONMENTAL JUSTICE

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE, a non-profit association,<br><br>Plaintiff,<br><br>v.<br><br>CORESLAB STRUCTURES LOS ANGELES, INC., a corporation,<br><br>Defendant. | Case No.: 2:25-CV-10398-WLH-AS<br><br>~~[PROPOSED]~~ **CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Plaintiff Center for Community Action and Environmental Justice ("CCAEJ" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, dedicated to working with communities to improve the social and natural environment;

**WHEREAS,** Defendant Coreslab Structures Los Angeles, Inc., ("Defendant") operates an industrial facility at 150 W. Placentia Avenue in Perris, California (the "Facility");

**WHEREAS,** the Facility's industrial activities consist of processes related the manufacturing of pre-cast concrete structures. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3273.

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** the General Permit requires all permittees, including Defendant, to comply with, *inter alia*, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the

1

development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, and (3) ensure that industrial storm water discharges do not cause or contribute to exceedances of applicable water quality standards;

WHEREAS, on July 9, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit at the Facility;

WHEREAS, on October 29, 2025, CCAEJ filed a complaint against Defendant in the Central District of California, Civil Case No. 2:25-CV-10398-WLH-AS (the "Complaint");

WHEREAS, Plaintiff's Complaint alleges violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Perris Valley Storm Drain, which discharges into the San Jacinto River, and then flows into Lake Elsinore (the "Receiving Waters");

WHEREAS, Plaintiff and Defendant (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

WHEREAS, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

[PROPOSED] CONSENT DECREE

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.    The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.    Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.    The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.    CCAEJ has standing to bring this action.

5.    The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

## I.    OBJECTIVES

6.    It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by CCAEJ in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA. The 60-day Notice and Complaint are herein incorporated to this Consent Decree by reference.

7.    In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.    AGENCY REVIEW AND CONSENT DECREE TERM

### A.    AGENCY REVIEW OF CONSENT DECREE

8.    <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period"). If the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.    <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, to coordinate the Court's calendar with the 45-day review period.

10.    <u>Entry of Consent Decree</u>. Promptly following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.    DEFINITIONS

11.    Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.    "BMPs" means Best Management Practices.

[PROPOSED] CONSENT DECREE

b.  "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

c.  "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

d.  "Discharge Point" means each outfall and discharge location designated in the operative SWPPP for the Facility.

e.  "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

f.  "Entry Date" means the day this Consent Decree is approved and entered by the Court.

g.  "Forecasted Rain Event" means a forecasted rain event with a fifty percent (50%) or greater probability of precipitation above 0.1 inches as predicted twenty-four (24) hours before the rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for Perris, CA.

h.  "MIP" means a Monitoring Implementation Plan.

i.  "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

j.  "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

k.  "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

l.  "SWPPP" means a Storm Water Pollution Prevention Plan.

5

m.   "Term" means the period between the Effective Date and the "Termination Date."

n.   "Termination Date" means the latest of:

   i.   June 30 following two (2) years from the Effective Date;

   ii.   Seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated before June 30 following two (2) years after the Effective Date; or

   iii.   In the event an Action Plan (as hereinafter defined) is required per Paragraph 21 below based on sampling results from the 2027-2028 reporting year, upon the later of either Defendant's confirmation of the implementation of the measures described in the corresponding Action Plan or Defendant's confirmation of the implementation of the measures determined pursuant the Action Plan review process set forth below in Paragraph 21(c).

III.   COMMITMENTS OF THE SETTLING PARTIES

   A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

   12.   Current and Additional Best Management Practices: In addition to maintaining the current BMPs at the Facility, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT.

   13.   Implemented BMPs: Defendant shall maintain in good working the following BMPs that were implemented at the Facility before the Effective Date of this Consent Decree:

[PROPOSED] CONSENT DECREE

a.    Implemented a series of PIG FLT822 filtration socks in the drainage channel leading to Discharge Location 1. These socks were placed in conjunction with existing straw wattles in the drainage channel. Incorporated an inspection and maintenance schedule for all socks and wattles.

b.    Implemented an electronic rain gauge in a location not impacted by surrounding structures.

c.    Enhanced sweeping program on all paved areas of the Facility to occur within twenty-four (24) hours before a Forecasted Rain Event, subject to equipment maintenance, equipment functionality, and weather considerations. To the extent that the twenty-four (24) hour deadline occurs during a weekend or federal holiday, the Facility shall perform said sweeping on the next non-holiday non-weekend operating day.

d.    Maintained daily sweeping activities at the Facility.

e.    To increase the natural infiltration potential and permeability of the area along the eastern perimeter of the Facility just north of Discharge Location 3, Defendant leveled the area.

f.    To remove sediment from vehicles exiting the Facility, Defendant installed a series of rumble strips at the western entrance/exit.

B.    **SAMPLING AT THE FACILITY**

14.    During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events per Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.

7

[PROPOSED] CONSENT DECREE

15. Sampling Parameters: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

16. Laboratory and Holding Time: Except for pH samples, Defendant shall cause delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136.

17. Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

18. Reporting: Defendant shall upload complete and final laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall either email CCAEJ with notification of said upload or provide copies of said results to CCAEJ within ten (10) days of receiving the complete and final laboratory report with the results.

C.    REDUCTION OF POLLUTANTS IN DISCHARGES

19. Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

TABLE 1

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Total Suspended Solids | 100 mg/L | Annual NAL |
| Oil & Grease | 15 mg/L | Annual NAL |
| Iron | 1.0 mg/L | Annual NAL |

8

[PROPOSED] CONSENT DECREE

20.    Table 1 Exceedances. An "Exceedance" of **Table 1** is defined as follows: where the average concentration of any pollutant in all storm water samples during a particular reporting year from a particular Discharge Point from the Facility exceeds any corresponding numeric limit contained in Table 1.

21.    Action Plan for Table 1 Exceedances: As of the Effective Date, and for the remainder of the Term, if Defendant's storm water samples demonstrate an Exceedance of Table 1 as defined above, or an exceedance of the General Permit (i.e., an exceedance of the annual NALs or instantaneous maximum NALs), Defendant shall prepare and submit to CCAEJ a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility (**"Action Plan"**). The complete Action Plan shall be submitted to CCAEJ by July 31 of each year of the Term, as applicable.

a.    Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an assessment of the source of each contaminant exceedance and/or applicable; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than November 1 following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of all the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to CCAEJ in writing, with photographs (as appropriate),

9

[PROPOSED] CONSENT DECREE

that such BMPs have been implemented as set forth in the Action Plan.

    b.    Action Plan Proposed BMPs: The following BMPs should generally be evaluated, if appropriate, for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

        i.    Hydrologic Controls: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance systems or storm water retention or treatment facilities.

        ii.    Sweeping: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas. Upgrading the Facility's sweeper.

        iii.    Treatment Systems: Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water before discharge. This could include a modification of the storm water sampling points to incorporate more filtration.

        iv.    Evaluation of Existing BMPs:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

[PROPOSED] CONSENT DECREE

c.   Action Plan Review: CCAEJ shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments or ask questions. Within thirty (30) days of receiving CCAEJ's proposed revisions to an Action Plan, Defendant shall consider each of CCAEJ's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d.   Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 24 below.

D.   **STORM WATER POLLUTION PREVENTION PLAN REVISIONS**

22.   SWPPP Revisions: Within thirty (30) days of the Effective Date, Defendant shall revise the SWPPP as follows:

a.   Revisions to SWPPP map:

i.   Remove the drainage area called DMA2 from the map and revise the nomenclature of the other drainage areas accordingly. This includes a revision to demonstrate that portions of the DMA2 flow towards DMA1.

ii.   Depict the extent of the drainage channels that runs east-west in the southern portion of the Facility.

11

[PROPOSED] CONSENT DECREE

iii.   Depict the new landscaped areas along the southern perimeter of the Facility.

iv.   Depict both the actual storm water discharge locations and the actual storm water sampling locations.

v.   Indicate that storm water flows from the northern parts of the current drainage areas do not discharge from the Facility.

vi.   Depict the locations of the municipal storm drain inlets that receive the Facility's storm water discharges.

vii.   Depict the locations of the filtration socks.

b.   Additional revisions:

i.   Include regular inspection and maintenance schedule for filtration socks.

ii.   Institute and incorporate into the Facility's SWPPP a formal pre-rain protocol to be implemented within twenty-four (24) hours before a Forecasted Rain Event, involving inspection of any filters/socks deployed at the Facility, removal of any exposed waste material, and site-wide sweeping of paved areas, To the extent that the twenty-four (24) hour deadline occurs during a weekend or federal holiday, the Facility shall perform said protocol on the next non-holiday non-weekend operating day.

iii.   Revise SWPPP team to identify alternative team members to conduct required monitoring when regularly assigned pollution prevention team members are unavailable.

iv.   Include all BMPs set forth in this Consent Decree.

12

[PROPOSED] CONSENT DECREE

23.     Defendant shall submit the complete, updated SWPPP to CCAEJ within sixty (60) days of the Effective Date for CCAEJ's review and comment.

24.     Additional SWPPP Revisions: Within thirty (30) days after approval of any Action Plan by CCAEJ (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to CCAEJ for review and comment.

E.     COMPLIANCE MONITORING AND REPORTING

25.     Every Reporting Year during the Term, CCAEJ may conduct an annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. Any Site Inspection shall occur during normal business hours, and CCAEJ will provide Defendant with at least seventy-two (72) hours' notice before a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 51. During the wet weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Points, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to CCAEJ. CCAEJ's representative(s) may observe the split sample(s) being collected by Defendant's representative. Upon confirming with Defendant that there are no projects of a sensitive nature, CCAEJ shall be permitted to take photographs or video recordings during any Site Inspection.

26.     Document Provision. During the Term, Defendant shall notify and/or submit documents to CCAEJ as follows:

a.     Within (30) days of submission, Defendant shall provide CCAEJ with notification of all compliance documents, monitoring and/or

13

sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. To the extent such documents or information are uploaded to SMARTS, Defendant may satisfy this requirement by providing CCAEJ with notification of said upload.

b.    Within thirty (30) days of receipt by Defendant, Defendant shall send to CCAEJ any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall email electronic copies of documents to CCAEJ at the relevant notice addresses contained below.

F.    **ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, COMPLIANCE OVERSIGHT**

27.    <u>Environmental Benefit Projects</u>: To fund environmentally beneficial projects that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the San Jacinto River watershed, Defendant shall make a payment totaling forty thousand dollars ($40,000.00) to the Rose Foundation for Communities and Environment ("Rose Foundation") made payable to the Rose Foundation as follows: Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607, Attn: Jodene Isaacs. Payment shall be made by Defendant to the Rose Foundation within thirty (10) calendar days of the Entry Date. Defendant shall copy Plaintiff with any correspondence and a copy of the check sent to the Rose Foundation. The Rose Foundation shall provide notice to the Settling Parties within

thirty (30) days of when the funds are dispersed by the Rose Foundation, setting forth the recipient and purpose of the funds. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

28.    CCAEJ's Fees and Costs: Defendant agrees to pay a total of forty-six thousand ($46,000) to CCAEJ to reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. Payment shall be made by Defendant within thirty (30) days of the Entry Date. Payment by Defendant to CCAEJ shall be made in the form of a single check payable to "Lozeau Drury LLP," and shall constitute full payment for all costs of litigation, including investigative, expert and attorneys' fees and costs incurred by CCAEJ that have or could have been claimed in connection with CCAEJ's claims, up to and including the Entry Date. The payment shall be delivered by certified mail or overnight carrier to Lozeau Drury LLP, c/o Rebecca Davis, 1939 Harrison Street, Suite 150, Oakland, CA 94612, unless made via wire transfer.

29.    Compliance Oversight Costs. As reimbursement for CCAEJ's future fees and costs that will be incurred in order for CCAEJ to monitor Defendant's compliance with this Consent Decree and to effectively meet and confer and evaluate storm water monitoring results for the Facility, Defendant agrees to reimburse CCAEJ for its reasonable fees and costs incurred in overseeing the implementation of this Consent Decree up to but not exceeding six thousand  dollars ($6,000) per Reporting Year. Fees and costs reimbursable pursuant to this Paragraph may include, but are not limited to, those incurred by CCAEJ or its counsel to meet and confer regarding proposed treatment options, review water quality sampling reports, review photographs, review annual reports, discussion with Defendant's representatives concerning potential changes to compliance requirements, preparation and participation in meet and confer sessions, and water quality sampling. For each

[PROPOSED] CONSENT DECREE

Reporting Year, CCAEJ shall provide an invoice not to exceed six thousand dollars ($6,000) for any fees and costs incurred in overseeing the implementation of this Consent Decree. **Payments shall be made payable to "Lozeau Drury LLP"** at the address set forth above in Paragraph 28 within thirty (30) days of receipt by Defendant.

## IV.    DISPUTE RESOLUTION

30.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

31.    Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

32.    Conference with Magistrate. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 31 above, unless otherwise extended by mutual agreement, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

33.    In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

16

[PROPOSED] CONSENT DECREE

1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.    MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

34.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

35.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

36.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

37.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

17

[PROPOSED] CONSENT DECREE

nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

39.     Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

40.     Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41.     Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

42.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

43.     Severability. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

[PROPOSED] CONSENT DECREE

44.     Choice of Law. The laws of the United States shall govern this Consent Decree.

45.     Diligence: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

46.     Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

47.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

48.     Modification of the Consent Decree. This Consent Decree, and any material provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

49.     Assignment. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Coreslab Structures Los Angeles, Inc. transferee or assign ("Coreslab Assignee") will continue industrial operations at the Facility, Defendant shall notify CCAEJ ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Defendant will provide CCAEJ with a written assignment

19
[PROPOSED] CONSENT DECREE

and assumption duly executed by Defendant and the Coreslab Assignee assigning Defendant's obligations under this Consent Decree to the Assignee.

50.    Force Majeure. Neither of the Parties shall be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather (adjudged from the baseline of the Facility's average weather), economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

51.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Defendant: |
|---|---|
| Ana Gonzalez | Jon Clausen |
| Email: ana.g@ccaej.org | Email: jclausen@coreslab.com |
| CENTER FOR COMMUNITY ACTION AND ENVIRONMENTAL JUSTICE | Coreslab Structures Los Angeles, Inc. 150 W. Placentia Ave. Perris CA, 92571 |

20

[PROPOSED] CONSENT DECREE

| P.O. Box 33124 | Phone: (951) 943-9119 Ext. 201 |
| Riverside, CA 92519 | |
| Phone: (951) 360-8451 | |

| With copies to: | With copies to: |
| Douglas Chermak | Charles Pomeroy |
| Email: doug@lozeaudrury.com | Email: cpomeroy@stilespomeroy.com |
| LOZEAU DRURY LLP | STILESPOMEROY LLP |
| 1939 Harrison Street, Suite 150 | 150 N. Santa Anita Ave., Suite 300 |
| Oakland, CA 94612 | Arcadia, CA 91006 |
| Phone: (510) 836-4200 | Phone: (626) 243-5599 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

///

///

///

///

///

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

[PROPOSED] CONSENT DECREE

Dated: April 27_____, 2026          By: _Ana Gonzalez_____
                                        Ana Gonzalez
                                        Executive Director
                                        Center for Community Action and
                                        Environmental Justice


Dated: APRIL 21___, 2026               By: _____
                                        Jon Clausen
                                        Vice President and General Manager


**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.


Dated: 6/29/2026_____          CENTRAL DISTRICT OF CALIFORNIA


_____
HONORABLE Wesley L. Hsu
United States District Court Judge

22

[PROPOSED] CONSENT DECREE